UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOSHUA TANNER HAHN,<br><br>    Plaintiff,<br><br>    v.<br><br>Z. TAYLOR, K. ROBINSON,<br>CASTENEDA, and JOSEPH SNYDER,<br><br>    Defendants. | CAUSE NO. 3:24-CV-926-JD-JEM |

OPINION AND ORDER

Joshua Tanner Hahn, a prisoner without a lawyer, filed a complaint after he was attacked by another inmate at the Indiana State Prison. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In his complaint, Hahn sets forth the long history he had with the inmate, Durell Crain, who ended up assaulting him on March 9, 2024. Earlier in 2023, Crain had accused Hahn of cutting Crain's arm, inflicting deep lacerations to the bone. Hahn was placed in A-Block, Protective Custody's segregation block, on October 2, 2023, pending

a disciplinary hearing. In December 2023, Crain was also placed in A-Block after he was accused of assaulting another inmate.

When Crain entered A-Block, he made multiple threats towards Hahn in front of Unit Team Manager Joseph Snyder. Therefore, Snyder placed Crain on the bottom range, separate from Hahn, who was housed on the top range. Snyder assured Hahn that he would inform all the custody staff that when Hahn was out for his recreation and shower time, the bottom range must stay locked and secure, and when Crain was out for recreation and shower, the gate to upstairs must stay locked and secured.

On January 12, 2024, UTM Snyder announced that the inmates in A-Block were going to be moved to General Protective Custody because A-Block was going to be housing death row inmates. Hahn was to be moved into D-Block, and Crain was to be moved into C-Block. Hahn complains that although they were on different blocks, the blocks were neighboring and Hahn and Crain could see each other from certain points of their cells. In addition, the blocks shared a common dayroom, which each block used daily. Per policy, the blocks used the dayroom at different times, but inmates from different blocks might still come into contact when they are going to medical or food sales.

UTM Snyder assured Hahn that he would make sure all the staff knew about the issues between him and Crain. He said that staff would make sure that Crain and Hahn had no contact. Hahn protested that staff routinely allow inmates to stay out of their cells, and it would be easy for Crain to walk into the dayroom and kill him. Hahn reminded Snyder that Crain would have access to him at med passes as well. Snyder

told Hahn that he did not have a choice and that if he did not move to his new block, he would call a signal to remove him from A-Block and have staff physically put him in D-Block. So, Hahn complied and moved to D-Block. He was assured that he and Crain would be kept separate until Crain could get moved off the unit.

On March 9, 2024, a lapse in policy allowed Crain to have access to the dayroom when Hahn's block was using it. After C-Block's rec time ended that day, Officer Taylor failed to properly secure C-Block after the inmates, including Crain, returned. Taylor was supposed to lock the inmates into their cells at the end of each recreation time and walk the whole block to make sure everyone was secured in their cells. But that day, several inmates, who were drunk and loud, failed to secure in their cells in C-Block and Taylor did nothing about it.

Hahn's block used the dayroom next. During their time in the dayroom, Officer Taylor signaled to the block workers that it was time for them to get the unit's food. He opened C-Block to let those block workers out, but he did not ensure that C-Block's door was secured after they exited the block. This allowed Crain, who had not been secured in his cell like he should have been, to leave his block and come into the dayroom, where Hahn was. Hahn tried to avoid Crain, but Crain cornered him and started hitting him in the face. Hahn ended up on the floor with Crain on top of him, striking him in the head with his fists and elbows.

When the attack stopped and Hahn got back to his feet, he saw that Crain was gone. He complains that Officer Taylor never intervened to stop the assault and the officer didn't believe him when he said he had just been assaulted. Taylor refused to call

3

a signal until many other inmates began yelling for a lieutenant. Lieutenant Lott came and locked the whole protective custody unit down and took picture of Hahn's injuries. Another officer took him to medical, where he was taken to a hospital in an ambulance. At the hospital, he complained of severe headaches, blurry vision, nausea, and severe right arm and shoulder pain. He was diagnosed with a concussion and still suffers from most of those symptoms today.

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id*. at 833 (cleaned up). That said, not every such violent altercation violates the Constitution. *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). "Rather, only deliberate indifference to an inmate's wellbeing is actionable: a prison official is liable for failing to protect an inmate from another prisoner only if the official knows of and disregards an excessive risk to inmate health or safety." *Id*. (cleaned up). Accordingly, when an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. In the context of failure to protect cases, the Seventh Circuit has equated "substantial risk" to "risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005) (quotation marks omitted); *see*

4

*also Thomas v. Dart*, 39 F.4th 835, 843 (7th Cir. 2022) (quoting *Brown* and noting that a "bare 'increased risk' [of being assaulted associated with having mental health issues] does not necessarily correlate to a 'substantial risk'"). "Exercising poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997).

Hahn first seeks to hold Officer Taylor responsible for allowing Crain to gain access to him based on, first, failing to secure Crain in his cell after recreation and, second, failing to ensure Crain's cell block was properly secured after letting the block workers out. Hahn alleges that Taylor also used to work on A-Block and so had longstanding knowledge of the need to keep him and Crain separate. Despite that knowledge, Taylor did not take the necessary steps to ensure Hahn's safety. Hahn may proceed against Taylor on an Eighth Amendment claim for failing to protect him from harm.

However, Hahn may not proceed against Officer Taylor for not providing him medical care when he asked. It is concerning that Officer Taylor did not seek medical care for Hahn. But based on the allegations in the complaint, it appears that this caused only a brief delay in Hahn receiving medical care. A delay in providing medical care for serious medical needs can constitute deliberate indifference, particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020). But here, there are no allegations that Hahn experienced a significant delay in receiving medical care.

5

Hahn also seeks to hold UTM Snyder liable for the attack for his decision to place him in a block neighboring Crain, knowing that Crain was threatening to kill him. Prison officials who have actual knowledge of a substantial risk to a prisoner's health or safety may avoid liability if they respond reasonably even if the harm was not ultimately diverted. *Farmer*, 511 U.S at 844; *see also Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006). Here, Snyder was aware of the risk, but he implemented safety measures to protect Hahn through practices to keep the blocks separate. Absent plausible allegations of ongoing lapses of the sort here, Snyder's decision was reasonable. Hahn alleges that he told Snyder when he was moved that he wouldn't be safe because staff "routinely" allow inmates to stay out of their cells. ECF 2 at 6. But he doesn't provide supporting facts detailing the frequency this occurred; inmates being allowed to stay out of their cells daily presents a different risk than being allowed to stay out of their cells a few times a month. Thus, these allegations are too vague to allow a reasonable inference that Snyder knew housing Hahn and Crain in separate blocks would not keep Hahn reasonably safe. Further, this attack occurred nearly two months after the move, and Hahn does not identify any other lapses of this sort over those two months that would put Snyder on notice that these issues were so common that as a result, Crain would almost certainly gain access to Hahn in order to attack him if the two were housed in neighboring blocks.

Finally, Hahn sues Sergeant K. Robinson and Lieutenant Castaneda for failing to make sure that the officers under their supervision, like Officer Taylor, followed policy. However, under 42 U.S.C. § 1983 supervisors can be held responsible only for their own

6

actions, not for the actions of the people they supervise. *See Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009) ("Section 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." (internal citation omitted)). For a supervisor to be held liable, he must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). This is a high standard, designed to ensure that "supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018).

For these reasons, the court:

(1) GRANTS Joshua Tanner Hahn leave to proceed against Officer Z. Taylor in his individual capacity for compensatory and punitive damages for failing to protect him from a substantial risk of harm from Durell Crain by failing to properly secure Crain's block on March 9, 2024, which allowed him to leave and assault Hahn in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES K. Robinson, Casteneda, and Joseph Snyder;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Officer Z. Taylor at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 2);

(5) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Officer Z. Taylor to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on March 28, 2025

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT